613 So.2d 441 (1993)
Calvin Earl BURKS, Petitioner,
v.
STATE of Florida, Respondent.
No. 79122.
Supreme Court of Florida.
January 21, 1993.
*442 Jeffrey L. Dees, Ormond Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., and Judy Taylor Rush, Nancy Ryan and Barbara C. Davis, Asst. Attys. Gen., Daytona Beach, for respondent.
PER CURIAM.
We review Burks v. State, 589 So.2d 355, 358 (Fla. 5th DCA 1991), in which the district court certified the question:
MAY THE STATE OFFER IN EVIDENCE AN ADMISSION AGAINST INTEREST TO ESTABLISH ONE OF THE ELEMENTS OF THE CHARGED OFFENSE IN THE ABSENCE OF AN INDEPENDENTLY ESTABLISHED CORPUS DELICTI?

We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative but approve the decision below because the elements of the crime charged were independently established.
The district court affirmed Burks' conviction for "driving under the influence" manslaughter.[1] The facts are reported in the district court opinion:
[On the morning of February 15, 1990,] Florida Highway Patrol Trooper C.W. Heaton was dispatched to the scene of a traffic accident. When he arrived he found a tractor-trailer blocking both northbound lanes of U.S. Highway 17. A motorcycle was lying in the roadway, and the body of the motorcyclist was lying near the truck.
Heaton was advised at the scene that Calvin Burks, standing outside the truck, had been the driver of the truck. Heaton conducted a traffic investigation in order to complete an accident report as required by section 316.066(4), Florida Statutes (1989). He then advised Burks that he was terminating the traffic investigation and was about to conduct a criminal investigation. He gave Burks the Miranda warnings and conducted a criminal investigation. During the criminal investigation, Burks admitted that he was the driver of the truck and that he had been drinking heavily all evening. He was subsequently taken to the hospital for a blood test. His blood alcohol level was .14.
Burks was convicted of DUI manslaughter. He appeals contending that the corpus delicti was not established prior to admitting into evidence his admission that he was the driver of the truck; i.e., there was no evidence, other than his admission, direct or circumstantial, that placed him behind the wheel of the truck. We disagree.
... .
There is another reason why we affirm. We state it by footnote because we do not wish to detract from the issue *443 that we hope the supreme court will address. In the case at bar there was other evidence that appellant was the driver. The trooper testified, without objection, that appellant's supervisor came to the scene and inquired if appellant "could drive his vehicle away and continue on his run."
Id. at 356 & 357 n. 4 (footnote omitted).
Ballentine's Law Dictionary 276 (3d ed. 1969) defines corpus delicti as "the fact that a crime has actually been committed, that someone is criminally responsible."[2]
We held, in State v. Allen, 335 So.2d 823, 824 (Fla. 1976), that "the state has the burden of proving by substantial evidence that a crime was committed, and that such proof may be in the form of circumstantial evidence." "This standard does not require the proof to be uncontradicted or overwhelming, but it must at least show the existence of each element of the crime." Id. at 825. We also determined that the identity of the defendant as the guilty party is not a necessary predicate for the admission of a confession. We explained the policy reasons for the corpus delicti rule: "The judicial quest for truth requires that no person be convicted out of derangement, mistake or official fabrication." Id. at 825. In the instant case, the corpus delicti was established, as noted by the district court. Burks, 589 So.2d at 357 n. 4. Burks' speech was slurred, his eyes were bloodshot, he smelled strongly of alcohol; there was a dead body on the road; a truck was illegally blocking the highway; Burks' supervisor asked if Burks could drive his vehicle away and continue on his run. These facts were sufficient to remove the danger of Burks being "convicted out of derangement, mistake or official fabrication." Allen, 335 So.2d at 825.
Burks also claims that the district court erred in characterizing his "confession" as an "admission against interest,"[3] thereby *444 finding the statements admissible. We agree with Burks that nomenclature is not dispositive. We said in Allen:
The sole contention of Allen was that, before his confession was admitted, the state had not proved he was driving the vehicle from which Curtis Black was thrown and killed. This question is relevant, since there would have been no crime if Black had been the driver.
Allen, 335 So.2d at 825. Thus although we used the term "confession" in Allen, it is clear we were, in fact, dealing with an admission, not a confession.
We likewise held in Hodges v. State, 176 So.2d 91, 92 (Fla. 1965), where "admissions against interest" were involved, that a new trial was required because "the fact that the crime of larceny had occurred could not be established by the other evidence introduced without the aid of the admission." Id. at 93 (emphasis added). To the same effect is Deiterle v. State, 101 Fla. 79, 80, 134 So. 42, 43 (1931), which held that: "The corpus delicti cannot be proven solely by a confession or admission." (Emphasis added.)
The error in exempting admissions from the corpus delicti rule is harmless, however, because, as stated above, all the elements of the crime[4] were proved by direct or circumstantial evidence[5] without dependence on Burks' statements. The cross-examination of Officer Heaton established that Burks' supervisor asked if Burks could drive his vehicle away and continue on his run. This statement and the reasonable inferences that flow from it put Burks behind the wheel independently of his own statements.
The State cites Parrish v. State, 90 Fla. 25, 105 So. 130 (1925), as authority for admitting admissions without proving the corpus delicti because we said there that the two can be treated differently. We note however that our distinction was in the context of the defendant's assertion that the admissions were not voluntarily given, not that the corpus delicti had not been proved.
We therefore approve the result below although we disapprove of its reasoning.[6]
It is so ordered.
BARKETT, C.J., and OVERTON, GRIMES, KOGAN and HARDING, JJ., concur.
McDONALD, J., concurs specially with an opinion, in which BARKETT, C.J., concurs.
SHAW, J., concurs in part and dissents in part with an opinion.
*445 McDONALD, Justice, specially concurring.
I question whether we should answer the certified question at all because in this case the corpus delicti had clearly been established separate and apart from Burks' statement.
I tend to believe that it is a good rule to require proof that a crime has been committed by means other than the utterance of an accused. The purpose is to avoid innocents from confessing to nonexistent crimes. In all but a few instances the state can independently prove that a crime has been committed.
BARKETT, C.J., concurs.
SHAW, Justice, concurring and dissenting.
I agree that the conviction should be approved, but would answer the question in the affirmative. The corpus delicti rule has outlived its usefulness and should be discarded.
Courts and commentators have recommended the abolition of the rule. See Maria L. Crisera, Reevaluation of the California Corpus Delicti Rule: A Response to the Invitation of Proposition 8, 78 Cal. L.Rev. 1571, 1573 nn. 12 & 15 (1990). Cisera makes this observation:
[A] number of courts and commentators have suggested that the corpus delicti form of the rule has outlived any useful purpose it might once have had. First, they argue that the corpus delicti rule was ill-suited from the outset to its stated purpose of protecting the defendant from conviction on the basis of a false confession. Second, they maintain that recent developments in criminal law and procedure have rendered the rule both impractical and unnecessary. In response to these criticisms, a growing number of courts now favor the more flexible corroboration rule over the strict corpus delicti rule.
Id. at 1573 (footnotes omitted).
The supreme court of New Jersey has noted the illogic of the corpus delicti rule and abandoned it for a "more flexible" rule:
In our view, the test ... that the State must introduce independent proof of facts and circumstances which strengthen or bolster the confession and tend to generate a belief in its trustworthiness, plus independent proof of loss or injury, affords ample protection for the accused and is the rule best designed to serve the ends of justice in the administration of the criminal law.
... .
The evil at which the corroboration rule was aimed was not that the death which was confessed to was in fact accidental rather than felonious, but rather that there was, in fact, no death at all. This objection is, as Dean Wigmore noted, overcome by the requirement that the State prove independently of the confession only the fact of loss or injury.
State v. Lucas, 30 N.J. 37, 152 A.2d 50, 60 (1959) (emphasis added; citations omitted).
The rule has led to odd results as statutory crime replaced common law crimes. The supreme court of North Carolina has noted:
Curiously, however, many courts have defined the corpus delicti as proof of each element of the crime charged. Plainly, independent evidence of the corpus delicti, defined as it is in this jurisdiction to include proof of injury or loss and proof of criminal agency, does not equate with independent evidence as to each essential element of the offense charged. Applying the more traditional definition of corpus delicti, the requirement for corroborative evidence would be met if that evidence tended to establish the essential harm, and it would not be fatal to the State's case if some elements of the crime were proved solely by the defendant's confession. It is therefore axiomatic that the results obtained through application of a rule requiring independent proof of the corpus delicti will not be consistent or comparable so long as corpus delicti is variously defined.
There is another problem which may account, in part, for the complexities of *446 application of the corpus delicti rule. While defining the corpus delicti "may have been a relatively simple task when crimes were few and concisely defined, ... modern statutes tend to define offenses more precisely and in greater detail than traditional case law. Defining the corpus delicti has thus become more complex." McCormick, Evidence § 145 at 371.
Finally, we note that a strict application of the corpus delicti rule is nearly impossible in those instances where the defendant has been charged with a crime that does not involve a tangible corpus delicti such as is present in homicide (the dead body), arson (the burned building) and robbery (missing property). Examples of crimes which involve no tangible injury that can be isolated as a corpus delicti include certain "attempt" crimes, conspiracy and income tax evasion. The difficulty of applying the traditional corpus delicti rule of corroboration to these offenses may, in part, account for the shift in emphasis to a rule requiring corroboration of each essential element of the crime charged. Perceiving this trend toward a broad interpretation of the corpus delicti, one author notes that:
(T)he corpus delicti rule ... is periodically misapplied, and its emphasis on the elements of the crime charged as opposed to the reliability of the confession has caused several courts and commentators to question the extent to which the corpus delicti version serves its original purposes, and to prefer the alternative trustworthiness version.
The quoted author's comments are generally reflective of the views expressed by a number of courts and commentators that the corpus delicti version of the corroboration requirement may have "outlived its usefulness." McCormick, Evidence § 145 at 370.
State v. Parker, 315 N.C. 222, 337 S.E.2d 487, 493 (1985) (underscoring deleted; citations omitted).
I agree with the supreme court of North Carolina that the most workable rule is the one laid down for federal courts  the evidence independent of defendant's statements need not prove the corpus delicti as long as the government introduces substantial independent evidence which would tend to establish the trustworthiness of the defendant's statements. Id. at 495. See State v. Paris, 76 N.M. 291, 414 P.2d 512, 515 (1966) ("It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth.") (quoting Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954)). See also State v. Yoshida, 44 Haw. 352, 354 P.2d 986 (1960) ("trustworthiness of confession" test adopted instead of corpus delicti); State v. George, 109 N.H. 531, 257 A.2d 19 (1969) ("sufficient independent evidence" test instead of corpus delicti).
The rule requiring that the corpus delicti be proved before a confession can be admitted is an anachronism. It is a technicality that impedes rather than fosters the search for truth. I would therefore recede from cases requiring that the corpus delicti be proved before a confession can be admitted into evidence and adopt the "trustworthiness" test announced in the above cases.
NOTES
[1] § 316.193(3), Fla. Stat. (1989).
[2] Corpus delicti is defined in Black's Law Dictionary 344 (6th ed. 1990) as:

The body (material substance) upon which a crime has been committed, e.g., the corpse of a murdered [person], the charred remains of a house burned down.... [T]he objective proof or substantial fact that a crime has been committed. The "corpus delicti" of a crime is the body, foundation or substance of the crime, which ordinarily includes two elements: the act and the criminal agency of the act.
Professors LaFave and Scott explain corpus delicti thus:
[E]very crime "reveals three component parts, first the occurrence of the specific kind of injury or loss (as, in homicide, a person deceased; in arson, a house burnt; in larceny, property missing); secondly, somebody's criminality (in contrast, e.g., to accident) as the source of the loss,  these two together involving the commission of a crime by somebody; and thirdly, the accused's identity as the doer of this crime." By the great weight of authority, the first two without the third constitute the corpus delicti... . [C]orpus delicti embraces the fact that a crime has been committed by someone  i.e., that somebody did the required act or omission with the required mental fault, under the required (if any) attendant circumstances, and producing the required (if any) harmful consequence, without embracing the further fact (needed for conviction) that the defendant was the one who did or omitted that act or was otherwise responsible therefor.
The concept of corpus delicti in criminal law is principally used in connection with two rules, both of which are concerned with reducing the possibility of punishing a person for a crime which was never in fact committed: (1) the almost-universal American rule that, in order to convict the defendant of a crime on the basis of his extrajudicial (i.e., out of court) confession or admission, the confession or admission must be corroborated by some evidence (it need not be evidence beyond a reasonable doubt) of the corpus delicti; and, (2) the rule of a few states that capital punishment cannot be imposed without direct proof of the corpus delicti.
Wayne R. LaFave & Austin W. Scott, Jr., 1 Substantive Criminal Law § 1.4(b), at 24 (1986) (emphasis and underscoring deleted; footnotes omitted).
[3] As noted by the district court:

The Fifth Edition of Black's Law Dictionary makes the following distinction between a confession and admission against interest:
Confession: A voluntary statement made by a person charged with the commission of a crime or misdemeanor, communicated to another person, wherein he acknowledges himself to be guilty of the office charged[.]
A statement made by a defendant disclosing his guilt of crime with which he is charged and excluding possibility of a reasonable inference to the contrary[.]
Voluntary statement made by one who is a defendant in a criminal trial at a time when he is not testifying in trial and by which he acknowledges certain conduct of his own constituting a crime for which he is on trial; a statement which, if true, discloses his guilt of that crime and excludes possibility of reasonable inference to contrary.
Admission against interest: A statement made by one of the parties to an action which amounts to a prior acknowledgment by him that one of the material facts relevant to the issues is not as he now claims...[.] Any statements made by or attributable to a party to an action, which constitute admissions against his interest and tend to establish or disprove any material fact in the case.
Therefore, to be a confession, the statement must acknowledge guilt of the crime charged.
Burks v. State, 589 So.2d 355, 357 (Fla. 5th DCA 1991).
[4] The crime of which the elements must be proven need not be the exact crime charged. As we pointed out in State v. Allen, 335 So.2d 823, 825 (Fla. 1976):

It is a fundamental principle of law that no person be adjudged guilty of a crime until the state has shown that a crime has been committed. The state therefore must show that a harm has been suffered of the type contemplated by the charges (for example, a death in the case of a murder charge or a loss of property in the case of a theft charge), and that such harm was incurred due to the criminal agency of another.
Thus, it is sufficient if the elements of the underlying crime are proven rather than those of the particular degree or variation of that crime which may be charged. See Hart v. State, 301 Ark. 200, 783 S.W.2d 40, 42 (1990).
[5] "Circumstantial evidence" is defined in Ballentine's Law Dictionary 201 (3d ed. 1969) as: "Facts and circumstances surrounding a transaction from which the jury or trier of the fact may infer other connected facts which reasonably follow, according to the common experience of [human]kind."
[6] We decline to address the other issues raised in the appeal because they are unnecessary to the resolution of the certified question.