776 So.2d 1100 (2001)
David A. PRICE, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-35.
District Court of Appeal of Florida, Fifth District.
February 9, 2001.
James B. Gibson, Public Defender, and Marvin F. Clegg, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.
HARRIS, J.
This case requires that we once again visit the issue of corpus delicti.
After receiving a 911 call from David Price at 7:22 a.m., the police found the body of Debra Price, appellant's wife, lying on the couch with a gunshot wound which entered her neck and exited behind her ear. Her blood alcohol level was .193% and she had recently been arrested for DUI. There was gunshot residue on the victim's left hand. At the scene, Price advised the police that he awakened to discover his wife holding a gun and threatening suicide. Price insisted that he was in the kitchen making his wife a drink to calm her when he heard the shot. He stated that he neither touched the gun nor the body before immediately calling 911.
In a statement given later in the day (and recorded), Price, after blood splatter was found on his shirt, stated that when his wife pointed the gun at her head, he *1101 wrestled the gun away from her head but was unable to take the gun from her. He then began walking toward the kitchen to fix her a drink when the shot rang out, but he admits that he must have been in close proximity to her in order for the blood to get on him. In his final statement (also recorded), Price stated he was able to wrestle the gun from his wife and put it on the counter and that the victim must have gotten up, retrieved the gun, and returned to the couch before shooting herself. In all of the statements he was consistent in saying that he called 911 within a minute of the shooting.
All of these statements were exculpatory. They are clearly prejudicial to Price, but not because of the content of any single statement. They are prejudicial because they are inconsistent with each other and with the other evidence found at the scene. Are these statements barred by the corpus delicti rule? In answering this question, we should look to the policy behind the corpus delicti rule as stated in Burks v. State, 613 So.2d 441, 443 (Fla.1993); quoting State v. Allen, 335 So.2d 823, 824 (Fla.1976).
The judicial quest for truth requires that no person be convicted out of derangement, mistake or official fabrication.
It appears to us that if Price were to be convicted because of the inconsistency of his exculpatory statements, it could not be said that he has been convicted "out of derangement, mistake or official fabrication." In our view, it would be an unwarranted extension of the corpus delicti rule to apply it to post-Miranda, exculpatory (even if inconsistent) statements.
In any event, we find that a proper corpus delicti was established in this case based on the physical evidence and the circumstantial evidence presented to the jury:
(1) The physical examination of the body placed the time of death at least one hour before the receipt of the 911 call.
(2) An expert on blood splatter evidence testified that the line of trajectory of the bullet and the blood splatter was inconsistent with suicide.
(3) Another expert testified that because of the position of the gunshot residue on the victim's hand, it appeared that the victim was defending herself against a shot rather than self-inflicting one.
(4) The blood splatter on Price's shirt proved that he was present when the shot was fired.
(5) The victim's sister testified that the victim was considering leaving Price.
(6) Testimony was received without objection regarding Price's inquiry on the day of his wife's death concerning her insurance policy.
(7) Because Price had been fired from his employment, the insurance coverage on his wife would have expired three days after the shooting.
Corpus delicti may be established by direct or circumstantial evidence. In this case, it was established by a combination of both. The state has the burden to bring forth "substantial evidence" tending to show the commission of the charged crime. This standard does not require the proof to be uncontradicted or overwhelming, but it must at least show the existence of each element of the crime. See State v. Allen, 335 So.2d 823 (Fla.1976).
Here, the state put on substantial evidence, independent of Price's statements, sufficient to show that Debra Price was dead and that her death was caused by the criminal agency of another.[1] In *1102 addition, the state proved opportunity (Price was clearly there when the shot was fired) and motive. The state need not prove its case beyond a reasonable doubt prior to putting Price's statements into evidence.
Finding no merit in Price's other points on appeal, which argue for reversal of his conviction, we affirm. However, we remand for the entry of a new restitution order because the notice of appeal in this case was filed prior to the entry of that order. See Kern v. State, 726 So.2d 353 (Fla. 5th DCA 1999).
AFFIRMED.
THOMPSON, C.J., and PLEUS, J., concur.
NOTES
[1] The purpose of the corpus delicti rule is not, as is the Miranda requirement, to protect an accused from his uncounseled statements. It is merely to assure that one will not be convicted of a crime unless it is first shown that a crime has actually been committed. Thus, the state must only show that a harm has been suffered of the type contemplated by the charges and that such harm was incurred due to the criminal agency of another. Normally this will require proof of the identity of the victim. It does not, however, require proof that the accused committed the offense before receiving his statements into evidence. See State v. Allen, 335 So.2d 823, 825 (Fla.1976).