586 So.2d 1196 (1991)
Glenn Patrick BAXTER, Appellant,
v.
STATE of Florida, Appellee.
No. 89-02939.
District Court of Appeal of Florida, Second District.
September 13, 1991.
*1197 W. Thomas Wadley of Rahdert & Anderson, St. Petersburg, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
ALTENBERND, Judge.
Glenn Patrick Baxter appeals his conviction for conspiracy to traffic in 400 or more grams of cocaine. §§ 893.135(5),.135(1)(b)3., Fla. Stat. (1987). Although he raises several issues on appeal, only one merits discussion. The defendant contends that the state's evidence was insufficient to permit the introduction of his confession and to support his conviction. We disagree and thus affirm his conviction.
In the summer of 1988, the defendant approached a friend and asked the friend if he could obtain some cocaine. The friend was a confidential informant for the Pinellas County Sheriff's Department. As a result, the sheriff's department set up a reverse sting.
The informant called the defendant on the telephone on September 13, 1988, to discuss the transaction. The informant's telephone was equipped with a tape recorder. In the recorded conversation, the defendant indicated that he wanted to purchase the cocaine for a man named "Caesar." The defendant indicated that he needed to call Caesar to determine if Caesar was willing to pay $19,000 for one kilogram of cocaine.
On the following day, the confidential informant again called the defendant. The men discussed the possibility of a half-kilogram transaction. In that recorded call, the defendant explained that Caesar owned a business known as "Rubber City." It is undisputed that Caesar Grajoles owned Rubber City. These recorded telephone conversations between the defendant and the informant were played to the jury without objection.
After the telephone calls and further discussions, the defendant agreed to purchase one kilogram of cocaine from the informant for $18,500. The men agreed to meet at a convenience store and to complete the deal at the defendant's home. Thus, the police deployed several undercover officers around the home to observe the sale. The defendant left his home to meet the informant. During the defendant's absence, Mr. Grajoles arrived at the defendant's home. According to the undercover officers, Mr. Grajoles drove through the neighborhood and approached the home in a manner which they believed to be counter-surveillance activity.
The informant and the defendant met at the convenience store and proceeded to the defendant's home. During the sting operation, the informant wore a body transmitter and acted under police supervision and surveillance. When they arrived at the home, Mr. Grajoles was standing outside. Upon seeing the informant, Mr. Grajoles said, *1198 "See you later," and immediately left in his car. The informant believed that Mr. Grajoles knew about the informant's recent arrest in a separate drug deal.
When Mr. Grajoles quickly left the defendant's home, some of the police officers followed his car without attempting to stop him. Mr. Grajoles took evasive action and the police eventually lost sight of his vehicle. The police later arrested Mr. Grajoles at his home.
As a result of Mr. Grajoles' sudden exit, the sale was not completed. According to the informant, the defendant reacted angrily to the lost deal. The defendant's wife was present in their home during the aborted transaction. She had known the informant since middle school and knew Mr. Grajoles as a friend of her husband. Although she did not hear any conversations between her husband and Mr. Grajoles concerning the drug deal, she did hear her husband and the informant discuss the cocaine deal after Mr. Grajoles had left. The wife asked the informant to leave the cocaine at the home, but he declined to do so and instead returned to the sheriff's department.
Shortly thereafter, the police questioned the defendant at his home. After receiving Miranda warnings and waiving his constitutional rights, the defendant admitted to the officers that he agreed to act as a broker in the cocaine deal. He stated that Mr. Grajoles agreed to pay him $500 for arranging the deal. The defendant also told the officers that he was supposed to buy some of the cocaine from Mr. Grajoles at a reduced price. It is this confession that the defendant argues should not have been admitted into evidence.
Although presented by the defendant as a single issue, this point on appeal actually involves two distinct issues. First, in order to permit the introduction of the confession, did the state establish the corpus delicti of a conspiracy to traffic in cocaine between the defendant and Mr. Grajoles?[1] Second, did the state establish a prima facie case of such a conspiracy to submit the case to the jury? We answer both issues in the affirmative.
Concerning the first issue, the nature and quality of the corroborative evidence that the state must present in order to use a defendant's confession is not always easy to describe.[2] As a result, it is helpful to begin any analysis of the rules concerning corpus delicti with a reminder that their function is not to satisfy a magic Latin phrase. Rather, the primary function served by requiring corroborative evidence for the admission of a confession is to protect a defendant from being convicted of a nonexistent crime due to "derangement, mistake or official fabrication." State v. Allen, 335 So.2d 823, 825 (Fla. 1976). See also Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). Independent proof of the corpus delicti assures that someone actually committed the offense described in the information or indictment. See Farinas v. State, 569 So.2d 425 (Fla. 1990); Allen; Thomas v. State, 531 So.2d 708 (Fla. 1988); Stone v. State, 378 So.2d 765 (Fla. 1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980); Frazier v. State, 107 So.2d 16 (Fla. 1958); Davis v. State, 582 So.2d 695 (Fla. 1st DCA 1991). Corroborative evidence also helps preserve the integrity of our system of justice from false confessions.
To accomplish these functions, Florida law determines the elements of the corpus delicti of the charged crime or an applicable lesser offense and then requires the *1199 state to establish those elements with a sufficient quantum of evidence. Thomas; Parrish v. State, 90 Fla. 25, 105 So. 130 (1925). The elements of "the body of an offense," i.e., its corpus delicti, do not necessarily include each element of proof required to establish the defendant's guilt. For example, the defendant's identity is not typically an element of a crime's corpus delicti. Allen.

I. THE CORPUS DELICTI OF CONSPIRACY.
In Jimenez v. State, 535 So.2d 343 (Fla. 2d DCA 1988), this court stated:
The crime of conspiracy involves an express or implied agreement between two or more people to commit a criminal offense. Both an agreement and an intent to commit the offense are necessary elements. It has been well settled that mere presence at the scene of an offense coupled with knowledge of the offense is insufficient to establish a conspiracy.
Id. at 344 (citations omitted). Conspiracy involves more than merely aiding and abetting and should not be allowed to become "so elastic" as to defy definition. Ramirez v. State, 371 So.2d 1063 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1201 (Fla. 1980); see also Ashenoff v. State, 391 So.2d 289 (Fla. 3d DCA 1980). While presence at the scene of an offense or an attempted offense by itself is insufficient to establish participation in a conspiracy, presence is a factor which the jury may consider in addition to other evidence. Herrera v. State, 532 So.2d 54 (Fla. 3d DCA 1988).
The elements necessary to show that the crime of conspiracy has been committed are distinctly different from the elements associated with a crime such as homicide. This seems especially true where the object of the conspiracy is a single, uncompleted crime.[3] An implied, two-party agreement to commit an inchoate crime and the intent of the parties to commit that crime may exist with little or no physical evidence to establish them. For many rational or irrational reasons, during a criminal transaction such as the purchase of illegal drugs, a person may make untrue statements suggesting the involvement of a fictitious partner or a real person unconnected to the transaction.[4]
As a result, the criminal justice system guards against convictions for imaginary conspiracies. Because of such concerns, even when there is evidence that a defendant has committed a crime, we have not always allowed an uncorroborated confession to be the sole evidence establishing a greater or second offense. See Johnson v. State, 569 So.2d 872 (Fla. 2d DCA), review denied, 581 So.2d 167 (Fla. 1990) (confession alone cannot increase possession of cocaine to possession with the intent to sell); see also Smith v. State, 566 So.2d 590 (Fla. 2d DCA 1990) (although burglary had been proven, confession alone cannot support additional crime of dealing in stolen property). Thus, we hold that in order to establish the corpus delicti of conspiracy, the state must present substantial evidence that the defendant and a coconspirator agreed to commit a crime and that the defendant intended to commit the offense. Cf. Mack v. State, 772 S.W.2d 162, 165 (Tex. Crim. App. 1989) ("The corpus delicti of a conspiracy is the agreement to commit the crime.").

II. THE STATE'S BURDEN OF PROOF.
The state is not required to prove the elements of the corpus delicti beyond a reasonable doubt. Instead, the state must merely present some evidence that "tends to show that the crime was committed." Farinas, 569 So.2d at 430. See also Sochor v. State, 580 So.2d 595 (Fla. 1991); Thomas; Stone; Frazier. The state's corroborating *1200 evidence, however, must be "substantial." Allen, 335 So.2d at 825. Nevertheless, "circumstantial evidence is all that is required to establish a preliminary showing of the necessary elements of the crime." Buenoano v. State, 527 So.2d 194, 197 (Fla. 1988). While the corpus delicti may not be established solely by a confession, "confessions and admissions may be considered in connection with other evidence to establish it." Hodges v. State, 176 So.2d 91, 92 (Fla. 1965). As explained by the United States Supreme Court: "It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." Opper, 384 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101, 109.
Applying the above principles to this case, we conclude that the corpus delicti of conspiracy was adequately proven by the state. The defendant's agreement and intent to traffic in cocaine is established by the confidential informant's testimony, the defendant's tape-recorded telephone conversations with the informant, the defendant's presence at the time and location of the scheduled drug transaction, as well as his trip to the convenience store and his returning with the informant. Mr. Grajoles' agreement to traffic in cocaine is adequately established by his presence at the time and place of the scheduled transaction, coupled with his counter-surveillance activity shortly before the scheduled transaction and his rapid and evasive departure from that location. As a result of this evidence, we are convinced that there is little or no risk that the defendant's confession was the product of "derangement, mistake or official fabrication." Allen.
Because the defendant's own confession was properly admitted into evidence, the second issue is easier to resolve. The circumstantial evidence, combined with the confession, clearly establishes a prima facie case of a conspiracy between the defendant and Mr. Grajoles which was sufficient for submission to the jury. See La-Polla v. State, 504 So.2d 1353 (Fla. 4th DCA 1987).
Affirmed.
SCHOONOVER, C.J., and PATTERSON, J., concur.
NOTES
[1] We note that this conspiracy is not based upon an agreement between the defendant and the confidential informant. Such an agreement does not provide the basis for a conspiracy. See King v. State, 104 So.2d 730 (Fla. 1957); Edwards v. State, 516 So.2d 285 (Fla. 2d DCA 1987).
[2] See generally McCormick, Evidence § 145 (3d ed. 1984); 7 J. Wigmore, Evidence in Trials at Common Law § 2072 (1978); D. Nissman, E. Hagen & P. Brooks, Law of Confessions § 10:2 (1985); 3 Wharton, Criminal Evidence § 691 (13th ed. 1973).
[3] See 1 W. LaFave & A. Scott, Substantive Criminal Law § 1.4(b) (1986).
[4] We recognize that not all statements made by an accused are confessions as compared to admissions. Davis v. State, 582 So.2d 695 (Fla. 1st DCA 1991).